IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AX WIRELESS LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> DELL INC, and DELL TECHNOLOGIES INC., <br><br> *Defendant*. | § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 2:22-cv-0277-RWS-RSP <br> § <br> § <br> § <br> § |

## MEMORANDUM ORDER

Before the Court is Defendants Dell Inc., and Dell Technologies Inc.'s ("Dell") Motion to Transfer to the Northern District of California. (Dkt. No. 104). After consideration, the Court concludes that Dell has not met its burden of showing that the Northern District of California would be a clearly more convenient venue. Accordingly, the Court **DENIES** Dell's Motion to Transfer.

## I.   BACKGROUND

Ax Wireless LLC filed its Complaint on July 22, 2022 (Dkt. No. 1) and an amended complaint on October 17, 2022 (Dkt. No. 19) following Dell's Motion to Dismiss for Improper Venue (Dkt. No. 14). Ax Wireless asserts Dell products including Wi-Fi 6 or 802.11ax transceivers infringe U.S. Patent Nos. 9,584,262; 9,614,566; 9,973,361; 10,079,707; 10,291,449; 10,554,459; 10,917,272; and 11,212,146 (the "Asserted Patents"). (Dkt. No. 19 at ¶27.) In particular, Ax Wireless specifically alleges that the Wi-Fi 6 Standard implicates infringement. (Dkt. No. 104-4). Dell did not renew its Motion to Dismiss for Improper Venue, instead filing an answer on November 17, 2022 (Dkt. No. 30). Dell did not file the instant motion until July 14, 2023, a year after this action was filed. (Dkt. No. 104).

1

Ax Wireless brought similar suits alleging infringement of the Asserted Patents against HP Inc. and Lenovo Group Limited when it brought the instant lawsuit. *Ax Wireless LLC v. HP Inc.*, 2:22-cv-00279 (E.D. Tex 2023); *Ax Wireless LLC v. Lenovo Group Limited*, 2:22-cv-00280 (E.D. Tex. 2023). Ax Wireless also brought suit against Acer Inc. in February 2023, but has only asserts U.S. Patent No. 11,212,146. *Ax Wireless LLC v. HP Inc.*, 2:23-cv-00041 (E.D. Tex. 2023).

## II.    APPLICABLE LAW

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*"). The question whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and proper venue. *Id.* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in *Volkswagen I*.

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum

with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

The burden to show that a case should be transferred for convenience falls squarely on the moving party. *Id.* Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314-15; *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. See *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

### III.   ANALYSIS

#### a. Venue In the Northern District of California

As noted above, the question whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and proper venue. *Volkswagen I* at 203. The burden to prove that a case could have been brought in the transferee forum falls on the party seeking

transfer. See *Volkswagen II*, 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

Here, Dell only broadly alleges this suit could have been brought in the Northern District of California based on "Dell" maintaining two offices in the district. (Mot. at 10.) Ax Wireless, however, notes that Dell did not specify which Dell entity maintains those offices and, in deposition, Dell's declarant did not know which entity maintained the offices. (Opp. at 6). In response, Dell points to a Dell webpage noting the two offices are "Dell Technologies Global Offices" and pointing to a prior ruling transferring Dell to the Northern District of California. (Reply at 3.)

Considering the facts of the case, the Court finds Dell failed to show that *this* action could have been brought in the Northern District of California. Dell failed to support its allegation that "Dell" maintained two offices in the Northern District of California. Rather, it appears all Dell has shown is that Dell Technologies, not Dell Inc. has offices in California. (Opp. at 6.) Without showing this case could have been brought against all defendants, a movant has not met its burden to show the case could have been brought in its desired district. *See Blue Spike, LLC v. Texas Instruments, Inc*, No. 6:12-CV-499, 2014 WL 11858192, at *3 (E.D. Tex. Mar. 18, 2014) ("The movant bears the burden of establishing personal jurisdiction and venue as to all defendants—including third-party Defendants—in the transferee forum."); *Volkswagen I* at 203 (evaluating whether the transferee district had personal jurisdiction over third-party defendants); *In re LG Elecs., Inc.*, No. 2018-134, slip op. at 4 (Fed. Cir. Apr. 24, 2018 (finding that no showing of personal jurisdiction over one of the defendants justified denial of transfer motion). Likewise, Dell's citation to a prior transfer in *Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 WL 7077069, (W.D. Tex. Dec. 5, 2016) has no relevance.[1] That Court never found that Polaris's suit, much less any patent suit against Dell, could have been brought in the Northern District of California, rather the

---

[1] Indeed, Dell failed to effectively raise any argument that *Polaris* showed venue was proper for all Dell entities until its Reply. As such this argument is waived. *See Cajeli v. United States*, No. 4:13-CR-38(17), 2020 WL 1650823, at *6 (E.D. Tex. Mar. 26, 2020).

4

parties agreed to it. *Id.* at 1. This Court cannot find that an agreement of other parties, in another case, before another court can show that this case could have been brought in the Northern District of California.

In addition to Dell's failure to show this case could have been brought in its chosen district, Dell has also failed to demonstrate that the Northern District of California would be a "clearly more convenient forum," as explained below.

### b. The relative ease of access to sources of proof

Dell argues that the allegedly infringing modules were "researched, designed, developed, tested, and certified" by third-party suppliers that Ax Wireless subpoenaed in California. (Mot. at 13.) Dell argues witnesses for the suppliers, rather than itself, would control relevant documents and source code. (*Id.*)

Ax Wireless counters "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." (Opp. at 8 (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).) Ax Wireless further notes that Dell itself has produced the vast majority of non-venue discovery[2]. (*Id.* at 9.) Next, Ax Wireless argues Dell failed to identify any third-party documents with any specificity aside from source code. (*Id.*) Ax Wireless argues the source code is not in California, rather Ax Wireless points out that a subset of Intel's source code was developed in Texas, another subset in Israel, and MediaTek made its source code available in Alabama. (*Id.*)

In its reply, Dell reiterates the importance of its third-party suppliers now noting they possess proof of "testing, validation and certification" evidence Dell does not have. (Reply at 4.) Dell also argues that electronic discovery is not equally accessible everywhere. (*Id.*) Specifically, Dell points to source code arguing "Intel cannot simply hand over top-secret code to Texas employees who have no need for access." (*Id.*) [3]

---

[2] Dell contests that it produced the bulk of document discovery but not that it produced the bulk of non-venue discovery. (Reply at 4.)
[3] Dell further argues in its reply that the samples Ax Wireless requested during discovery are located in California or Oregon. (Reply at 4.) As this was raised for the first time in its Reply, Dell has waived this argument.

Considering the facts of this case, the Court finds this factor disfavors transfer. The Court finds the bulk of relevant evidence is with Dell in this case, as the accused infringer, in their Austin headquarters. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). While Dell's suppliers may have designed and developed the chips central to the accused functionality of the accused products, it is still Dell's products that are accused, not those of Dell's suppliers. *See Chrimar Sys., Inc. v. Dell, Inc.*, No. 6:15-cv-639, slip op. at 7 (E.D. Tex. Feb. 27, 2016); *Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-cv-762, slip op. at 5 (E.D. Tex. Aug. 25, 2015). Likewise, it is uncontested that Dell itself has produced the majority of non-venue discovery. (Opp. at 9).

While documents and other sources of proof held by Dell's suppliers in California weigh in favor of transfer, the Court finds they are outweighed in this case by Dell's own documents in Texas and Intel's Killer chip evidence in Texas. Likewise, the Court finds source code is located around the globe such that neither district is more convenient for access to source code.[4]

### c. The Availability Of Compulsory Process To Secure The Attendance Of Witnesses

Dell again identifies its suppliers located in the Northern District of California, arguing that they have all relevant knowledge as to the functionality of the accused products, but initially identifies no particular witnesses[5]. (Mot. at 12-13.) Dell further identifies two non-party inventors[6] of the asserted patents and prior art witnesses located in California. (*Id*.) Dell notes that the prior art witnesses it identifies are of

---

[4] Dell's argument that Intel cannot provide source code to unauthorized witnesses is not availing. As an initial matter it is unclear what relevance Dell believes this argument has. If Dell means to argue the custodians of the source code located in a particular district should be considered, it has neither identified any such custodians nor clearly made this argument. Thus the Court is unable to consider such an argument.

[5] While Dell does identify specific individuals employed by its third-party suppliers in the Background of its motion, it does not allege any witnesses of its third party suppliers would require compulsory process. As such, the Court only considers the suppliers themselves for this factor.

[6] Ax Wireless submitted a declaration from one of the inventors stating his willingness to attend trial in Marshall. (Dkt. No. 120-1.)

particular relevance as they are the authors of the art cited in Intel's IPR petitions. (Reply at 5.)

Ax Wireless first responds that Dell's suppliers do not weigh in favor of transfer. (Opp. at 10.) Ax Wireless notes that all three of Dell's identified suppliers are also within the subpoena power of this Court based on their facilities in Texas. (*Id*.) Further, Ax Wireless argues that Dell's suppliers should be given less weight under this factor since Dell made no showing that they are likely unwilling to testify. (*Id*.) In particular, Ax Wireless points to Intel's indemnification of Dell in this case as indicating any Intel witnesses will likely be willing. (*Id*.)

Ax Wireless identifies several third parties in Texas that weigh against transfer. (*Id*.) First, Ax Wireless notes Intel has several potential witnesses in Texas with knowledge first of the Killer chip, central to a subset of accused products, and two members of Intel's Dell sales team, the "Dell Team." (*Id*. 10-11.) Similarly, Ax Wireless identifies a MediaTek employee allegedly with knowledge of sales and other interactions with Dell relating to Wi-Fi 6. (*Id*.) Ax Wireless further identifies the Wi-Fi Alliance in Austin as having relevant information to its infringement case relating to the Wi-Fi 6 standard. (*Id*. at 12.) Finally, Ax Wireless notes two former Dell employees located in Austin that were involved with the implementation of Wi-Fi 6 in Dell products. (*Id*.)

Dell counters its suppliers are not subject to the subpoena power of this Court under FRCP 45(c)(1)(B) as the would "incur substantial expense." (Reply at 5 n.2.) Dell further argues that the potential Intel witnesses identified by Ax Wireless are both outside of the district and not relevant. (*Id*. at 5.) Dell also contests that its former employees possess any relevant information. (*Id*.) [7]

Considering the facts of this case, the Court finds this factor slightly disfavors transfer. First, Dell has failed to show any of Intel[8], Qualcomm, and MediaTek are only subject to compulsory process in

---

[7] Additionally, Dell argues the presence of "Licensing targets" of Ax Wireless in California favor transfer, but this argument was not raised until Dell's reply and is therefor waived.
[8] As noted below, as Dell's indemnitor in this case, Intel is better considered under the willing witness factor.

California. Rather, each is within this Court's subpoena power as well. Dell has only alleged compliance with this Court's subpoena power would require "substantial expense" but has made no attempt to show as much, and the Court knows that absent unusual circumstances there is no such substantial expense in driving from their locations.

Of the third parties subject to compulsory process in only one district, the Court finds on balance they weigh slightly against transfer. First, Dell's identification of several prior art witnesses is given little weight. While Dell has argued the prior art they authored is relevant based on Intel's assertion of the prior art before the PTAB, Dell has not shown the authors themselves are needed or even likely to provide trial testimony. The identified inventors located in California weigh in favor of transfer, though this is tempered as one inventor has stated his willingness to attend trial in Marshall. Finally, as the Wi-Fi Alliance is located in Texas and Dell has not shown that it would be subject to compulsory process in California[9], it weighs against transfer.

### d. The Cost of Attendance for Willing Witnesses

Dell identifies four categories of witnesses for whom it alleges attendance at trial would be less costly in the Northern District of California. (Mot. at 11.) Dell identifies several witnesses of its third-party suppliers, two inventors, several prior art authors, and several Dell witnesses. (*Id*.) Of the potential supplier witnesses, Dell focuses on witnesses from Intel in California, Oregon, Massachusetts, and Israel. (*Id*. at 4). Dell also identifies several MediaTek employees in the Northern District of California and several Qualcomm witnesses in the Southern District of California. (*Id*.) Of its own employees, Dell identifies four members of its team involved in procuring and incorporating Wi-Fi 6 chips in Taiwan and two in Austin, Tx. (*Id*. at 8.) Dell also

---

[9] Qualcomm and MediaTek's participation in the WiFi Alliance's standards-setting process does not counter the relevance of the Wi-Fi Alliance being in Texas. Particularly, Dell has not argued Qualcomm and MediTek could substitute for the WiFi Alliance if transferred to the Northern District of California.

identifies two inventors and several prior art inventors in California. (*Id*. at 6-7). Dell further argues that the Northern District of California is more convenient for all witnesses (including, ridiculously, those in Austin) as it is more convenient to travel to the Bay Area than it is to Marshall. (Reply at 6.)

Ax Wireless responds that Dell's identification of Qualcomm and MediaTek witnesses is speculative without a declaration or something more from those third parties. (Opp. at 12-13.) Likewise, Ax Wireless attacks the declaration submitted by Ms. Azizi identifying potential Intel witnesses as unreliable based on her apparent lack of investigation or knowledge of the development of Intel's Killer chip in Texas or the "Dell Team" supporting Dell also in Texas. (*Id*. at 12-14.) Ax Wireless identifies seven such Intel witness in Austin, Texas as well as four potential Dell witnesses in Texas including one also with the WiFi Alliance. (*Id*. at 14).

Considering the facts of this case, the Court finds this factor weighs slightly against transfer. As an initial matter, many of Dell's arguments rely on misapplications of law. First, Dell's argument that the Northern District of California is more convenient even for its Austin employees is legally incorrect. While "convenience" could be understood in a variety of ways, the Fifth Circuit uses the 100-mile rule. *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343. The 100-mile rule provides that when the distance between the transferor and proposed transferee venue exceeds 100 miles, inconvenience grows with the distance the witness needs to travel, not alleged increased travel time. *Id*. Second, Dell's identification of witnesses in Isarel, Taiwan, and Korea are neutral to this factor. When a witness has to travel a significant distance regardless of any transfer, such as witnesses overseas, the Court finds their convenience is not impacted by transfer and does not consider them for this factor. *See Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-cv-474, 2019 WL 3082314, at *20 (E.D. Tex. July 15, 2019). Finally, Dell's identification of third parties both for this factor and for

9

compulsory process misapplies the law. These two factors are distinct, availability of compulsory process applies to *unwilling* witnesses while this factor is focused on the cost of attendance for *willing* witnesses. *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *5 (E.D. Tex. June 14, 2022); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:20-cv-319, 2021 WL 4453590, at *3 (E.D. Tex. Sept. 29, 2021). As such, the only third parties the Court considered for this factor are Intel, as Dell's indemnitor, one inventor, and one prior art inventor who provided declarations that they are willing to travel to Marshall for trial.

Further, the Court agrees with Ax Wireless that Ms. Azizi's investigation and declaration are deficient and should be given lesser weight as to Intel's activities in Texas. Ms. Azizi's statement that "Intel has no witnesses or sources of proof in Texas that would be relevant to the . . . Wi-Fi 6 chips" is materially incorrect. (*Compare* Dkt. No. 104-2 ¶10 *with* Dkt. No. 120-8 at 59:17-60:16.) As such the Court gives little weight to Ms. Azizi's statements regarding Intel's activities in Texas and Dell's arguments based on the same. Dell's reply arguments regarding the Killer chip and supporting declaration could have been raised in its motion had Dell performed an effective investigation, as such Dell has waived these arguments.

The Court finds the Intel witnesses identified by the parties are neutral as Intel has roughly equal numbers of potential witnesses in both Texas and the West Coast. The Court finds the party witnesses[10] weigh against transfer. Most of the identified Dell witnesses are located in Austin for whom this district is more convenient. The remaining identified Dell witnesses are located in Taiwan and would be equally inconvenienced by trial in either district. Finally, the inventor and prior art inventor located in California do not outweigh the convenience of the party witnesses.

---

[10] Ax Wireless further identifies its corporate witness but does not identify any testimony he might provide. As such the Court does not consider Ax Wireless's corporate witness. *See In re Apple Inc.*, 2023 WL 5274629 at *2.

### e. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011).

Dell argues that because the various AX Wireless actions are currently split between Judge Gilstrap and Judge Schroeder and all defendants seek transfer to the Northern District of California, transfer could result in result in consolidation before a "single jurist." (Mot. at 13-14.)

Ax Wireless argues that Dell delayed by filing this Motion a year after the complaint and has instead actively litigated in this district for some 8 months prior to filing this Motion. (Opp. at 18-19.) Dell counters it filed its motion only 9 months after the amended complaint and 4 months before the scheduled *Markman* hearing and 9 months before trial. (Reply at 7.) Dell further states that if transferred "any progress hardly need to go to waste." (*Id.*)

First, Dell's alleged potential efficiency in consolidating all Ax Wireless's cases before a "single jurist" in the Northern District of California is entirely speculative. Such an argument relies first on all three defendants showing venue is clearly more convenient in the Northern District of California, a suggestion Dell made prior to HP or Lenovo filing any such motions. Second, Dell also relies on the notion the Northern District of California would assign each case to the same Judge, but Dell has offered no evidence that this is the Northern District of California's practice. Finally, any efficiencies to be gained from having all three actions heard by "a single jurist" are all already largely present as each case has been referred to the undersigned for pretrial. This argument does not support transfer.

Further, Dell materially delayed filing this motion. Dell's delay resulted in this Motion becoming ripe after the deadline to substantially complete document production and midway through claim construction briefing. (*See* Dkt. No. 136 at 4, 5). While Dell contends "any progress hardly need go to waste," that argument has no support in the real world. *See e.g. Entropic Communications, LLC v. Direct TV, LLC et al*, 2:22-cv-07775 (C.D. Cal. 2023) (Dkt. No 169) (After transfer from this Court, defendants requested renegotiation of discovery order, new infringement contentions, and delayed the *Markman* Hearing); *Unicorn Energy AG v. Tesla Inc.*, 5:21-cv-07476 (N.D. Cal. 2022) (Dkt. No. 108) (After transfer from this Court, defendants requested new infringement contentions and to restart the claim construction process despite proceeding to hearing prior to transfer). Thus, for the Court to find the progress made by the parties and the Court itself would "hardly need go to waste," Dell would need to stipulate to rest on the parties' existing work product or otherwise provide more to demonstrate such efforts would indeed not go to waste. Further, Dell's argument that its delay is minimal in light of Ax Wireless's amended complaint is not supported by any showing the amended complaint required additional preparation to file the instant motion.

Considering the facts before the Court, the Court finds this factor weighs against transfer.

### f. The Administrative Difficulties Flowing from Court Congestion

Dell argues the "[t]ime-to-trial in the EDTX and NDCA are within a few months of each other" and thus this factor is neutral. (Mot. at 104.) Ax Wireless argues the median time to trial in the Northern District of California is 36.6 months while only 16.7 in the Eastern District of Texas. (Opp. at 15.)

Based on the facts before the Court, the Court finds the time to trial in the Eastern District of Texas is faster and this factor weighs somewhat against transfer. While the parties' allegations

12

of wildly different times to trial seem irreconcilable, an examination of the parties' sources of proof demonstrates Dell's evidence is deficient. Dell provides charts showing the statistics for the disposition of 242 cases in this district and 81 cases in the Northern District of California. (Dkt. Nos. 104-63, 104-64.) In contrast Ax Wireless shows statistics for the disposition of some 25,000 cases in this district and some 57,000 cases in the Northern District of California. (Dkt. No. 120-39.) Dell appears to have carved out something less than the entire docket for both districts. Without any explanation such a showing is facially deficient, and Dell's showing is given no weight.

### g. The Local Interest in Having Localized Interests Decided at Home

Here, Dell argues that the Northern District of California has a local interest based on the work it alleges is done by its third-party suppliers in that district. (Mot. 14-15.) Ax Wireless only responds by broadly alleging the public interest factors are neutral.[11]

The Court finds this factor is neutral. As noted above, at issue is Dell's alleged infringement of the asserted patents, not that of Dell's suppliers. While this may implicate the work of those suppliers, that is ancillary to the actions giving rise to this case. Rather it is Dell's use and sale of the accused products which give rise to this case, thus local interest exists in Dell's home district in Round Rock, Texas. This is in neither district and this factor is neutral.

### h. Remaining Public Interest Factors

The parties agree that the remaining public interest factors are neutral. As such, the Court finds these factors are neutral.

---

[11] While Ax Wireless cites *Chrimar Sys. Inc. v. Del, Inc.*, No. 6:15-cv-639, slip op. (E.D. Tex. Feb. 27, 2016) in its sur-reply, this is a new argument raised for the first time only in its sur-reply and is therefore waived.

### i. Weighing of the Factors

In view of the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id*. Having weighed the foregoing factors, the Court concludes that the Northern District of California has not been shown to be "clearly more convenient."

## IV. CONCLUSION

The Court therefore **DENIES** Dell's Motion for the reasons provided above.

**SIGNED this 12th day of November, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE