**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AX WIRELESS LLC, | |
| Plaintiff, | Civil Action No. 2:22-cv-277-RWS-RSP |
| v. | **JURY TRIAL DEMANDED** |
| DELL INC., et al., | |
| Defendants. | |

**AX WIRELESS LLC'S MOTION TO STRIKE THE UNTIMELY AND IMPROPER
CLAIM CONSTRUCTION OPINIONS OF DR. STEPHEN WICKER**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.........................................1

III.  LEGAL STANDARD.........................................................................................3

IV.   ARGUMENT.......................................................................................................4

      A.   Dr. Wicker Improperly Construes the Term "Header Bits" to Exclude
           Encoded Header Bits..................................................................................5

      B.   Dr. Wicker Improperly Construes "Different Order" ...............................8

      C.   Dr. Wicker Improperly Construes the '146 Patent Claims to Inject
           Nonexistent Limitations.............................................................................9

      D.   Dr. Wicker Improperly Imports Limitations Into the "Receiver" Limitation
           of Claim 1 of the '146 Patent...................................................................12

      E.   Dell's Untimely Claim Constructions Are Waived ................................13

      F.   Dr. Wicker is Unqualified to Provide Prosecution Laches Opinions ....14

V.    CONCLUSION...................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*CIAS, Inc. v. All. Gaming Corp.*,
  504 F.3d 1356 (Fed. Cir. 2007) ....................................................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579, 592-93 (1993) ............................................................................ 3

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-cv-00011, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017,
  *rev'd on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020) ................................. 5, 13, 14

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ........................................................................ 5

*Hyatt v. Hirshfeld*,
  998 F.3d 1347 (Fed. Cir. 2021) ........................................................................ 14

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP, 2022 WL 19917854 (E.D. Tex. Sept. 23 2022) ....................... 12

*Music Choice v. Stingray Digital Grp. Inc.*,
  No. 2:16-cv-00586, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019) ........................................... 5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ........................................................................ 3

*PerdiemCo, LLC v. Industrack LLC*,
  No. 2:15-CV-00727, 2016 WL 6432699 (E.D. Tex. Oct. 31, 2016) .................................. 13, 14

*SB IP Holdings, LLC v. Vivint, Inc.*,
  No. 4:20-cv-00886, 2023 WL 6601415 (E.D. Tex. Oct. 10, 2023) .................................... 3, 4, 6

*Varta Microbattery GmbH v. Audio P'ship LLC*,
  No. 2:21-cv-00400, 2023 WL 5192986 (E.D. Tex. Aug. 11, 2023) ................................. *passim*

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ........................................................................ 7

*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) ......................................................................... 11

*Ziilabs Inc. v. Samsung Elecs. Co.*,
  No. 2:14-cv-203, 2015 WL 8274055 (E.D. Tex. Dec. 8, 2015) ........................................ 3, 9

**RULES**

FED. R. EVID. 702 ................................................................................................................... 2

## II.    INTRODUCTION

Under the Court's constructions and the plain and ordinary meaning of the claims, Dell's, infringement is clear cut.  Dell calls on its experts (Dr. Stephen Wicker and Mr. Duncan Kitchin) to provide non-infringement opinions that add nonexistent requirements to the claims, and in one instance, contradict the Court's claim construction.  Claim construction happened long ago, and Dell failed to raise the claim construction arguments it now seeks to present through its experts.  AXW thus requests that the Court strike the improper claim construction opinions and resulting non-infringement opinions.[1]

Additionally, Dr. Wicker opines on whether the prosecution of the asserted patents resulted from unreasonable and unexplained delay.  But he is not qualified to provide such opinions.  AXW respectfully requests that the Court strike these opinions as well.

## III.    PROCEDURAL AND FACTUAL BACKGROUND

The time for Dell to raise claim construction arguments was long ago.  AXW served its infringement contentions on November 3, 2022 identifying specific parts of the IEEE 802.11ax standard that demonstrated Dell's infringement.  Dkt. 28.  The citations encompassed encoded bits as satisfying the "header bits" and related limitations, as well as AXW's other infringement theories relevant to this motion.  *See, e.g.*, Ex. 1 at 4-5, 7, 14-19, 24-27, 32, 34-35, 37, 45-46, 77, 79, 86-91, 93-96, 101-103; Ex. 2 at 10-14, 17-24, 29, 34-35.  Dell served invalidity contentions on January 23, 2023 (Dkt. 71), which were later supplemented on June 6, 2023, relying on prior art that, like AXW's infringement contentions, encompassed encoded bits as satisfying the "header bits" and related limitations, and tried to mimic AXW's other infringement theories.  *See, e.g.*,

---

[1] Should the Court determine striking all such opinions is not the right course, despite Dell's waiver, AXW has concurrently filed an *O2 Micro* motion for supplemental claim construction.

1

████████████████████

Ex. 3 at 7-17, 31-33, 35-44, 46-55, 57-76, 90-99, 101-115; Ex. 4 at 5362, 5364-65; Ex. 5 at 7639-7642; Ex. 6 at 3-27.  While Dell stated these contentions were solely in the alternative to any position it may take on claim construction, *see, e.g.*, Ex. 3 at 2, Dell never took a contrary position on claim construction.

The parties exchanged terms for construction on June 23, 2023.  Dell proposed the term "header," appearing in each asserted claim, among others.  Ex. 7.  After Patent Rule 4-2 disclosures, the parties were close on their proposed constructions of header.  Ex. 8; Ex. 9.  When the parties filed the Joint Claim Construction Statement, they agreed to construe "header" as "The portion of a packet that precedes the payload and contains control information for the receiver to decode the payload properly."  Dkt. 118 at 2.  The Court issued its claim construction order on February 16, 2024, adopting the parties' agreed-upon construction of "header."  Dkt. 168 at 10.

During claim construction proceedings, Dell's supplier and indemnifier, Intel Corporation ("Intel"), filed petitions for *inter partes* review ("IPR") challenging all asserted claims at the Patent Office and named Dell as a real party in interest.[2]  In its petitions, Intel stated it does not "believe it is necessary for the Board to expressly construe any term for the purpose of" the IPRs.  *E.g.*, Ex. 10 at 9.  Intel also mapped—without any caveat regarding claim scope—the "encoder" of asserted claims to a "coding block 202" that applies "a forward error correction (FEC) technique such as, for example, binary convolutional coding (BCC)."  *Id.* at 38-39.  Dr. Wicker admitted that ████████████████████████████████████████████████████████  Ex. 11 (Wicker Dep.) at 86:6-15.  In March 2024, Dell filed essentially identical IPRs and moved to join the Intel IPR proceedings, asserting the same art and arguments.

---

[2] Perkins Coie represents both Dell and Intel in district court and the IPRs.

Meanwhile, in this Court, Dell refused to respond to AXW's interrogatories seeking the basis for Dell's non-infringement positions. Indeed, Dell delayed until after the *Markman* hearing to identify any of the arguments that it now advances through its experts. Ex. 12 at 30-103. But Dell never explained how such arguments complied with the Court's construction of "header." *Id.* Instead, Dell waited until serving rebuttal expert reports on April 17, 2024 to have its technical experts advance non-ementinfringement opinions based on untimely claim constructions that depart from the plain meaning of the claim terms.

## IV.    LEGAL STANDARD

An expert may testify only if "the proponent demonstrates to the court that it is more likely than not that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 594, 597. "Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion." *SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-cv-00886, 2023 WL 6601415, at *9 (E.D. Tex. Oct. 10, 2023).

Because the Court "is the sole arbiter of claim construction disputes," *id.*, expert witnesses cannot argue claim scope to the jury. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). Nor can experts offer non-infringement opinions that rely on the intrinsic evidence to limit the ordinary meaning of the terms. *See, e.g.*, *Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203, 2015 WL 8274055, at *2 (E.D. Tex. Dec. 8, 2015); *SB IP*,

3

2023 WL 6601415, at *9 (barring expert non-infringement testimony improperly narrowing plain and ordinary meaning of claim terms); *Varta Microbattery GmbH v. Audio P'ship LLC*, No. 2:21-cv-00400, 2023 WL 5192986, at *3-4 (E.D. Tex. Aug. 11, 2023) (same).  And an expert is not permitted to offer claim construction opinions under the guise of explaining the plain and ordinary meaning of terms.  *SB IP*, 2023 WL 6601415, at *9-10 (striking expert opinions that "venture beyond permissible opinions regarding the plain and ordinary meaning").

## V.    ARGUMENT

Here, Dr. Wicker advances at least four non-infringement opinions that usurp the Court's role of construing claims.  First, he construes the term "header bits" and related claim terms to exclude coded header bits.  Second, he limits the phrase "different order" to only cover a different time-domain order.  Third, he construes the claims of the '146 Patent to include nonexistent limitations.  And fourth, he imports a limitation from an exemplary embodiment into claim 1 of the '146 Patent.  But Dr. Wicker does not even attempt to disguise these opinions.  Indeed, he expressly admits in his rebuttal report that ███████████████████████████ ███████████████ based on claim construction principles, including the role of intrinsic and extrinsic evidence, he ████████████████████████████████ Ex. 13 (Wicker Rbt.) ¶¶ 8-18.[3]  That is an exercise is claim construction, and solely for the Court.

While Dr. Wicker's new constructions are flawed and contradict the intrinsic record, the Court need not address their merits because they are untimely.  Under the Court's DCO, the time to raise these erroneous constructions was during the claim construction process, not after.  Thus, the Court should strike the claim construction opinions that permeate and infect the non-infringement opinions, and prevent Dell from presenting such evidence or argument to the jury.

---

[3] All emphasis added unless otherwise noted.

4

See, e.g., *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011, 2017 WL 5137401, at \*16-17 (E.D. Tex. Nov. 4, 2017) (finding defendant waived untimely claim construction), *rev'd on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020); *Music Choice v. Stingray Digital Grp. Inc.*, No. 2:16-cv-00586, 2019 WL 8110069, at \*3-4 (E.D. Tex. Nov. 19, 2019) ("Because the Court concludes that Music Choice has waived this claim construction argument, the claim should be given its plain and ordinary meaning."). Dell has waived its right to construe these claim terms, and the constructions offered by Dr. Wicker contradict the plain and ordinary meaning of each term...

### A.    Dr. Wicker Improperly Construes the Term "Header Bits" to Exclude Encoded Header Bits

Rather than apply the plain meaning of "header bits" (and related terms "header bit," "header field," "header portion," or header "part") given the agreed-upon construction of "header," Dr. Wicker engages in claim construction to assert that "header bits" are limited to ***uncoded*** header bits and, thus, exclude coded header bits.  That is improper claim construction.

Dr. Wicker's opinions contradict the Court's construction of "header," which was agreed to by the parties.  "[E]xpert testimony inconsistent with the court's claim construction should be excluded because it is unreliable and unhelpful to the finder of fact."  *Varta*, 2023 WL 5192986, at \*3 (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009)). Based on the parties' agreement, tthe Court construed "header" as: "The portion of a packet that precedes the payload and contains control information for the receiver to decode the payload properly." Dkt. 168 at 10.  That construction does not distinguish between whether the control information or the header bits/field/portion/part of the packet is uncoded or coded.  Ex. 11 (Wicker Dep.) at 24:4-19 (                                                          ).  And the appending of "bits" (a unit of information) to the construction of "header" does not exclude

5

encoding. *See, e.g.*, *id.* at 61:20-22 (█████████████████████████████████ █████████████).

Dr. Wicker ignores that the Court's construction of "header" makes no such distinction and offers his own construction.  Specifically, he analyzes the intrinsic record (Ex. 13 (Wicker Rbt.) ¶¶ 70-78, 86-89, 108) and concludes: ███████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████████████████████ *Id.* ¶ 89.[4]  Dr. Wicker calls the coded header bits "codeword bits" and then uses his claim construction to exclude from the claims any header bits that have been encoded.  *See, e.g.*, *id.* ¶¶ 108-111 (████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████).

That is improper claim construction.  It is particularly improper because Dr. Wicker ignores the Court's construction of "header," effectively thumbing his nose at the Court's order.  *See Varta*, 2023 WL 5192986, at *3; *SB IP*, 2023 WL 6601415, at *9 ("An expert is bound by the claim construction set forth by the Court.").

Dr. Wicker's construction also disregards how a skilled artisan would read the claims and improperly excludes disclosed embodiments.  The Asserted Patents undisputedly relate to wireless OFDM systems.  *See, e.g.*, Dkt. 1-7, '272 Patent, cl. 11 (reciting "OFDM").  The specification identifies "IEEE 802.11" as a protocol with which the invention is to work.  *Id.* at 4:38-59.  All

---

[4] This opinion is demonstrably incorrect, at least because the specification incorporates by reference a standard that discloses forward error correction on the header of a packet, ████████ ███████████████████████. Ex. 11 (Wicker Dep.) at 75:8-77:2.  AXW explains this more fully in its concurrently-filed, in the alternative, claim construction motion.

experts agree that █████████████████████████████████████████████████████

███████     Ex. 14 (Wicker Op.) ¶ 410.  And Dr. Wicker could not identify a single OFDM-based 802.11 system that did not use error correction coding.  Ex. 11 (Wicker Dep.) at 59:15-21.  Dr. Wicker's construction thus excludes use of the invention with 802.11 systems altogether, contrary to the specification's express statements, which is incorrect.  *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) ("We normally do not interpret claim terms in a way that excludes disclosed examples in the specification.").

Indeed, in his invalidity report in the parallel HP case, Dr. Wicker opined that ██████████ ███████████████████████████████████████████████████████ that the prior art ████████████████████████████████ and then quoted from the prior art that explains that the header fields (and their header bits) █████████████████████████ Ex. 15 (Wicker HP Op.) ¶¶ 433, 468, 671, 707.  In that report, he also opined that the same prior art encoded header fields are ██████████████████████████ in the specification and ████████████████████████████ *Id.* ¶¶ 301, 374.[5]  Dr. Wicker also admitted that ███████████████████████████████████████████████████

███████     Ex. 11 (Wicker Dep.) at 55:5-17.  Thus, Dr. Wicker's "technical understanding" of the plain meaning of "header bits" and related terms covers ████████████████████

███, and his opinions based on his claim construction analysis that "narrow[s] the plain and ordinary meaning of the claims" should be stricken.  *Varta*, 2023 WL 5192986, at *3.

In sum, Dr. Wicker's non-infringement opinions based on "header bits" and related terms flow from improper claim construction opinions.  All such opinions should be stricken and Dr.

---

[5] To persuade the Patent office to institute Intel's IPR petitions, Dell gave a *Sotera* stipulation. Because of this, Dr. Wicker's Opening Report in the Dell case is essentially identical to the one in the HP case, but omits portions covered by the stipulation.

Wicker prevented from presenting argument or evidence based on them at trial.  *See* Ex. 13 (Wicker Rbt.) ¶¶ 84-89, 91-116, 175, 177, 179, 195, 206-18, 226-36, 244-57, 259-61, 263, 274-76, 279-85, 292-98, 307-14, 316-18, 320-22, 350, or portions thereof.

### B.    Dr. Wicker Improperly Construes "Different Order"

Dell did not seek to construe the phrase "different order," which is recited in many asserted claims.  Thus, the plain meaning applies.  For invalidity, Dr. Wicker applies the plain meaning.  But, like a nose of wax, he manufactures a non-infringement argument by construing the same phrase as limited to a different order only in the time-domain.  Dr. Wicker's new construction is untimely, lacks any basis in the intrinsic record, and should be stricken.

Dr. Wicker engages in claim construction by narrowing the claims' scope of "different order."  Claim 11 of the '272 Patent is representative.  In two limitations (differences inin brackets) the claim recites, "wherein the second [fourth] set of header bits of the second header field received using the second [fourth] OFDM symbol are received ***in a different order*** than the first [third] set of header bits of the second header field received using the first [third] OFDM symbol."  Dkt. 1-7, '272 Patent at 14:54-63.[6]  Nothing limits this order in the time domain as opposed to the frequency domain, as Dr. Wicker claims, and Dell did not seek a narrower construction during claim construction.

In OFDM symbols, bits are modulated onto subcarriers in the frequency domain, and are transmitted in parallel in the time domain.  *See, e.g.*, Ex. 14 (Wicker Op.) ¶¶ 141-142; Ex.13 (Wicker Rbt.) ¶¶ 264, 321; Dkt. 1-7, '272 Patent at 1:40-54.  Indeed, for invalidity, Dr. Wicker argues that the specification ██████████████████████ ████████████████ and that mapping bits to different OFDM subcarriers—██████████████

---

[6] Similar language appears in asserted claims of the '361, '707, '449, and '459 Patents.

████████—is ███████████████████████████████ Ex. 14 (Wicker Op.) ¶¶ 548, 550-51; *see also id.* ¶¶ 556, 558-59.

Even so, Dr. Wicker offers a claim construction opinion that ███████████████ ███████████████ and then argues that the "different order" limitation is not met by the accused products. Ex. 13 (Wicker Rbt.) ¶¶ 265, 322. But Dr. Wicker's opinions conflict with the claim language. As Dr. Wicker admits, the claims do not state that the order is limited to a time-domain order. Ex. 11 (Wicker Dep.) at 107:5-14. As Dr. Wicker also admits, ███████ ████████████████████████████ and a signal ████████████ ███████████████████ *Id.* at 106:25-107:9. And Dr. Wicker's invalidity opinions establish that the plain meaning of the claim language encompasses a frequency-domain order. Ex. 14 (Wicker Op.) ¶¶ 548, 550-551. Thus, Dr. Wicker's non-infringement opinions are based on improper claim construction opinions and should be stricken. *See, e.g.*, *Ziilabs*, 2015 WL 8274055, at *3 (excluding testimony where expert narrowed the term "connected" to "directly connected," contrary to claim language). *See* Ex. 13 (Wicker Rbt.) ¶¶ 260-65, 317-22, or portions thereof.

### C. Dr. Wicker Improperly Construes the '146 Patent Claims to Inject Nonexistent Limitations

The '146 Patent claims recite receiving packets that may have a "first packet format comprising a first header field carried by a first [OFDM] symbol" or a "second packet format comprising both the first header field carried by the first OFDM symbol and second header field carried by a second OFDM symbol which follows the first OFDM symbol, and the second header field being a repetition of the first header field." Dkt. 1-8, '146 Patent at 12:52-63, 13:17-14:4. The claims require distinguishing a second packet format from the first packet format "by detecting, from the received wireless packet, the second header field which repeats the first header

9

field." *Id.* at 12:66-13:2, 14:6-9.  Use of "header" and "OFDM symbol" aside, the claims were not construed and have their plain meaning.  *See* Dkt. 168.  Rather than apply the plain meaning, Dr. Wicker engages in claim construction that results in adding many limitations to the claims, which simply are not there.

Dr. Wicker begins his non-infringement analysis with classic (and impermissible) claim construction—reviewing the claim language, specification, IPR proceedings, and prior art.  *See* Ex. 13 (Wicker Rbt.) ¶¶ 323-31.  In doing so, Dr. Wicker notes that AXW's infringement expert ████████████████████████████████████████████████████████████ ██████████████████████████ despite there being no recitation of a "D value" in the claims.  *Id.* ¶ 330.  Continuing his improper claim construction analysis, Dr. Wicker reviews the claim construction briefing to identify limitations to add to the claims.  *Id.* ¶¶ 334-36.  Dr. Wicker concludes that the claims require ████████████████████████████████ ████████████████████████████████████████████  *Id.* ¶ 336.

To explain, AXW's expert argues that the 802.11ax standard describes detecting if a header field called "RL-SIG" is present in the received packet.  "RL-SIG" is a repeat of "L-SIG."  *See, e.g.*, Ex. 13 (Wicker Rbt.) ¶¶ 332-33 (depicting Table 27-11).  And if RL-SIG is detected, the device knows that it is an 802.11ax packet rather than a legacy 802.11 standard packet.  *Id.*  In fact, Dr. Wicker admitted at deposition that this read meets the claim limitation.  Ex. 11 (Wicker Dep.) at 113:6-14 (████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████).  But in his non-infringement report, Dr. Wicker does the opposite. He opines that the detecting RL-SIG is insufficient, because ████████████████████████

the standard requires ██████████████████████ that the receiver must perform. Ex. 13 (Wicker Rbt.) ¶ 341 (emphasis original). Dr. Wicker thus argues that, in the accused products, █

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. *See id.* ¶¶ 337-48. For example, he states, the ████████████████████████████████████████████████

████████████████████████████████████████ whereas the claims allegedly require determining a "specific format." *Id.* ¶¶ 335-36.

But that ignores that the claims use the transitional phrase "comprising" which, as a matter of law, is synonymous with "including but not limited to," and embraces additional, unrecited elements or method steps. *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). Said differently, the only distinguishing required is between the recited first packet format and second packet format—even if they are so called "broad categories," as Dr. Wicker puts it. █

████████████████████████████████████████████████████████████████████

██████████████████████████ Ex. 13 (Wicker Rbt.) ¶ 336; *Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999) (reversing non-infringement ruling erroneously based on accused device considering factors beyond those recited in a "comprising" claim). Dr. Wicker's claim construction opinion distorts the claims' meaning and scope, so his non-infringement opinions should be stricken. *See* Ex. 13 (Wicker Rbt.) ¶¶ 327-31, 333-48, 354, 364-68, or portions thereof.

Dr. Wicker similarly includes nonexistent limitations for the "detecting limitation." Dr. Wicker argues that in the accused products the distinguishing is not ████████████████

████████████████████████████████████ Ex. 13 (Wicker Rbt.) ¶ 349; *see also id.* ¶ 354 █████████████████████████████████████████████████

11

██████████████████

████████████████████████████████████████████████████████████

██████████ . ████████████████████████████████████████████ In fact, Dr. Wicker admitted that the specification (let alone the claims) does not ██████████████████

████████████████████████████████████ Ex. 11 (Wicker Dep.) at 131:25-132:6.  Dr. Wicker also construes the claims such that "detecting" requires decoding all the bits. *See* Ex. 13 (Wicker Rbt.) ¶ 353.  Dr. Wicker then improperly "relies on this altered claim scope to support his non-infringement positions."  *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 19917854, at *2 (E.D. Tex. Sept. 23 2022); *see* Ex. 13 (Wicker Rbt.) ¶¶ 354-58.  That is legally improper and these opinions should be stricken too.  *See id.* ¶¶ 349, 353-55, 358-68, or portions thereof.

In sum, Dr. Wicker's non-infringement opinions based on the distinguishing limitation stem from improper claim construction opinions inconsistent with the plain and ordinary meaning. All such opinions should be stricken.

### D.    Dr. Wicker Improperly Imports Limitations Into the "Receiver" Limitation of Claim 1 of the '146 Patent

Dr. Wicker identifies exemplary figures in the specification to argue that "***in the specification*** of the '146 Patent, the 'receiver' is shown as a separate component from the 'demodulation module.'"  Ex. 13 (Wicker Rbt.) ¶ 370.  He then construes the claim so that the "wireless receiver" and the "demodulator" are mutually exclusive, separate components. *Id.* ¶ 371. And he then asserts that the infringement opinions ████████████████████

████████████████████████████████████████████████████████████

as well as an ordering to the functionality claimed, that he injects into the claims. *Id.* ¶¶ 372-73.

Limiting the plain meaning "to what [Dr. Wicker] sees as the teaching of the specification" is improper claim construction.  *Varta*, 2023 WL 5192986, at *3-4.  It is particularly improper

because the claims do not require that the demodulator be mutually exclusive from the receiver. Indeed, that would contradict even Dr. Wicker's understanding of the plain meaning of a receiver. *See, e.g.*, Ex. 14 (Wicker Op.) ¶¶ 130 (█████████████████████████████), 145 (█████████████████████████████), 1025 (██████████████████████████████████████████████). This impermissible claim construction also leads Dr. Wicker to import an order of steps into *apparatus* claim 1 ██████████████████████████. *See* Ex. 13 (Wicker Rbt.) ¶ 372. Dr. Wicker cannot depart from that plain meaning and use exemplary embodiments in the specification to conclude that "the claims and the specification of the '146 patent are directed to a different hardware implementation" than the accused products. Ex. 13 (Wicker Rbt.) ¶ 373.

Dr. Wicker's claim construction opinions should be stricken and he should not be allowed to use them "to determine whether the accused products infringe." *Varta*, 2023 WL 5192986, at *4. *See* Ex. 13 (Wicker Rbt.) ¶¶ 369-73, or portions thereof.

### E.    Dell's Untimely Claim Constructions Are Waived

Claim construction arguments are waived when they could have been made during the claim construction phase but were not. *Ericsson*, 2017 WL 5137401, at *9-10, *15-17; *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-CV-00727, 2016 WL 6432699, at *3 (E.D. Tex. Oct. 31, 2016). Such waiver occurred here because, as discussed below, Dell had a chance to raise these arguments during claim construction but failed to do so.

Dell understood the potential for dispute before and during the claim construction process. AXW's infringement contentions laid out its theories consistent with its expert's opening reports. *See, e.g.*, Ex. 1 at 4-5, 7, 14-19, 24-27, 32, 34-35, 37, 45-46, 77, 79, 86-91, 93-96, 101-103; Ex. 2 at 10-14, 17-24, 29, 34-35. Dell's invalidity contentions and IPRs applied the prior art consistent

with AXW's infringement theories. *See, e.g.*, Ex. 3 at 7-17, 31-33, 35-44, 46-55, 57-76, 90-99, 101-15; Ex. 4 at 5362, 5364-65; Ex. 5 at 7639-7642; Ex. 6 at 3-27; Ex. 10 at 31, 34-35, 38-39, 45, 53, 74. Even so, Dell never sought construction of "different order," and therefore waived that argument. *See, e.g.*, *PerdiemCo*, 2016 WL 6432699, at *3. While Dell identified "header" for construction, it later agreed to a construction for that term (which the Court adopted). Dkt. 118 at 2; Dkt. 168 at 10. Thus, Dell's attempt to now ignore that construction, or at best belatedly augment it, is improper and waived. *PerdiemCo*, 2016 WL 6432699, at *3.

As to the '146 Patent, Dell chose not to seek construction of any claim terms. Instead, Dell pursued an indefiniteness challenge, which ultimately failed, resulting in claim 1 having its plain and ordinary meaning. Dkt. 168 at 9-10. Dell waived any other arguments regarding this claim, including those raised for the first time in Dr. Wicker's expert reports. *See, e.g.*, *PerdiemCo*, 2016 WL 6432699, at *3.

As explained above, the Court should strike the improper claim construction opinions and prevent Dell from presenting evidence or argument to the jury consistent with them. *Ericsson*, 2017 WL 5137401, at *15-17 (deeming claim construction argument waived and preventing waiving party from making any argument to the jury suggesting a meaning other than the plain meaning so that "an *O2 Micro* error will not occur").

### F.    Dr. Wicker is Unqualified to Provide Prosecution Laches Opinions

"Prosecution laches may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under a totality of the circumstances. Finding an unreasonable and unexplained delay in prosecution includes a finding of prejudice." *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1359-60 (Fed. Cir. 2021). In his opening report, Dr. Wicker opines on both requirements of the defense. Ex. 14 (Wicker Op.) ¶¶ 1044-49. But he is not qualified to render these opinions.

14

As to delay, Dr. Wicker merely states that he "reviewed the file histories" and then, without analysis, concludes "there is no apparent reason why claims like" those in the '146, '361, '707, '449, '459, and '272 Patents "could not have been filed sooner." Ex. 14 (Wicker Op.) ¶¶ 1045-46, 1049. On top of Dr. Wicker's failure to provide any analysis that would show that, under the totality of the circumstances, there was unreasonable and unexplained delay in prosecution of any of these patents, Dr. Wicker has no particular education, training, or expertise to provide such opinions. He is neither a patent lawyer, patent prosecutor, nor a former USPTO employee. He lists only 5 issued U.S. patents on his CV, *see id.* at Ex. 1, p.31—hardly enough to credit him an expert by experience. As he is unqualified to testify as to the first requirement, it would be unhelpful to have him testify about the second. Thus, Dr. Wicker's opinions cannot satisfy the *Daubert* standard and should be stricken.

## VI.    CONCLUSION

AXW respectfully requests that the Court strike the identified opinions and paragraphs of Dr. Wicker's reports. Specifically:

- Paragraphs 1044-49 of Dr. Wicker's Opening Report; and

- Paragraphs 84-89, 91-116, 175, 177, 179, 195, 206-18, 226-36, 244-57, 259-65, 274-76, 279-85, 292-98, 307-14, 316-22, 327-31, 333-50, 353-55, 358-73, of Dr. Wicker's Rebuttal report.


Dated: May 15, 2024                    Respectfully submitted,


                                       */s/ Kevin Wheeler*
                                       Claire A. Henry (Texas Bar No. 24053063)
                                       Charles Everingham IV (Texas Bar No. 00787447)
                                       Garrett C. Parish (Texas Bar No. 24125824)
                                       **WARD, SMITH & HILL, PLLC**
                                       1507 Bill Owens Parkway

Longview, TX 75604
Telephone: (903) 757-6500
Facsimile: (903) 757-2323
clair@wsfirm.com
ce@wsfirm.com
gparish@wsfirm.com

Kevin C. Wheeler
Jacob C. Vannette
David J. Hlavka
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
kevin.wheeler@lw.com
jake.vannette@lw.com
david.hlavka@lw.com

Clement Naples
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
clement.naples@lw.com

S. Giri Pathmanaban (Texas Bar No. 24074865)
**LATHAM & WATKINS LLP**
300 Colorado Street
Austin, TX 78701
Telephone: (737) 910-7300
Facsimile: (737) 910-7301
giri.pathmanaban@lw.com

Amit Makker
Brett M. Sandford
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
amit.makker@lw.com
brett.sandford@lw.com

*Attorneys for Plaintiff AX Wireless LLC*

16



## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed.

/s/ Kevin C. Wheeler
Kevin C. Wheeler

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 15th day of May, 2024.

/s/ Kevin C. Wheeler
Kevin C. Wheeler

17